```
 1   UNITED STATES DISTRICT COURT
     EASTERN DISTRICT OF NEW YORK
 2   ------------------------------x
                                      21-CR-126(DLI)
 3   UNITED STATES OF AMERICA,
                                      United States Courthouse
 4                                    Brooklyn, New York

 5        -versus-                    May 05, 2023
                                      10:00 a.m.
 6   TIMOTHY AMERMAN,

 7        Defendant.

 8   ------------------------------x

 9        TRANSCRIPT OF CRIMINAL CAUSE FOR SENTENCING
            BEFORE THE HONORABLE DORA L. IRIZARRY
10                UNITED STATES DISTRICT JUDGE

11   APPEARANCES

12   For the Government:      UNITED STATES ATTORNEY'S OFFICE
                              Eastern District of New York
13                            271 Cadman Plaza East
                              Brooklyn, New York 11201
14                            BY:  IAN RICHARDSON, ESQ.
                              Assistant United States Attorney
15
     For the Defendant:       BY:  NATALI TODD, ESQ.
16

17   Also Present:            STEVEN GUTTMAN, Probation

18

19   Court Reporter:          Rivka Teich, CSR, RPR, RMR, FCRR
                              Phone:  718-613-2268
20                            Email:  RivkaTeich@gmail.com

21   Proceedings recorded by mechanical stenography.  Transcript
     produced by computer-aided transcription.
22

23

24

25
```

SENTENCE

1              (In open court.)

2              THE COURTROOM DEPUTY:  All Rise.  Criminal cause for

3    sentencing, docket 21-CR-126, United States vs. Timothy

4    Amerman.

5              Please state your appearances.

6              MR. RICHARDSON:  Good afternoon, your Honor.

7    Ian Richardson for the United States, and I'm joined at

8    counsel table by Probation Officer Steven Guttman.

9              MR. GUTTMAN:  Good afternoon, your Honor.

10              THE COURT:  Good afternoon to both of you.

11              MS. TODD:  Good afternoon, your Honor.  Natali Todd

12    for Mr. Amerman.

13              THE COURT:  Good afternoon to both of you.

14              We're here today for a sentencing on Mr. Amerman's

15    plea of guilty to the only count in an information that was

16    filed by the Government.

17              Mr. Amerman, it's my practice before we actually get

18    into the heart of the sentencing hearing first to lay out how

19    it is that we're going to proceed at the hearing so that you

20    and our observers in the audience as well as the attorneys

21    will have a better understanding, hopefully, of what's going

22    to go on during the hearing.

23              The first thing that I'm going to do is I'm going to

24    place on the record everything that I have received and

25    considered with respect to sentencing, and that's so that all

SENTENCE

1    of the parties are assured that I indeed have received

2    everything that I should have received to consider with

3    respect to sentencing.  And then there's -- the reverse side

4    of that coin, if you will, it's also so that the parties are

5    assured that all of you have received everything that I

6    received so that we're all basically working with the same

7    information.

8              THE DEFENDANT:  Okay.  Understood, your Honor.

9              THE COURT:  Good.  The next thing that I'm going to

10   do is to the extent there are any outstanding objections to

11   the presentence report, I will resolve those.

12             Next, as I am required to do under the current state

13   of federal sentencing law, I will make a determination as to

14   what the guideline range should be.  Up until now, everybody

15   has just provided an estimate of what it is.  I'm going to

16   make that final determination today.

17             Next, because I do have to consider other things

18   besides the sentencing guidelines -- and the sentencing

19   guidelines are not mandatory; they're not binding on the

20   Court.  They're advisory only.  The Court does have the

21   obligation to consider them as an initial matter, and the

22   sentencing guidelines start at sort of -- they're the starting

23   point of the analysis, and the Court has to look at any

24   departures that might be available under the circumstances,

25   and the Government has made a motion under the guidelines

SENTENCE

1    which the Court has to consider.

2            But the Court also has to consider other things that

3    are called 3553(a) factors.  Those are some factors that are

4    under a statute, and we'll talk some more about that during

5    the hearing.

6            And so because I have all these other things to

7    consider, I will turn the floor over to counsel and hear from

8    them as to their sentence recommendation and the reasons for

9    their recommendation.

10           Next, the law does give you the right to make a

11   statement to the Court.  If you wish to make a statement, I'll

12   be happy to hear from you.

13           It's not until all of that has happened that I

14   actually will impose sentence.

15           Do you understand that process, sir?

16           THE DEFENDANT:  I understand, your Honor.

17           THE COURT:  Okay.

18           All right.  So the first thing that I have received

19   is the presentence report and the sentence recommendation by

20   probation.  The Government's letter of February 23, 2023,

21   advising that it had no objection to the presentence report.

22   Sometimes we call it a PSR.  You might have heard that.

23           The Court also has received and considered the

24   letter submitted by your attorney dated February 23, 2023,

25   objecting to the criminal history category as calculated by

SENTENCE

1    probation in the presentence report.  There is the

2    Government's response to defendant's letter, and that letter

3    is dated March 17, 2023, supporting the position taken by

4    probation.

5           There is the addendum to the presentence report that

6    was prepared by probation and -- essentially concluding that

7    it would not change the criminal history calculation and

8    providing additional information, including verification of

9    personal history and noting that probation had received an

10   acceptance of responsibility statement that was submitted on

11   your behalf, sir, by your attorney.  I'll address that

12   addendum some more in just a little bit.

13          There is the Government's letter motion to file its

14   sentencing memorandum under seal.  That request was granted,

15   and the Government's sentencing memorandum and motion.  And

16   I'll address that in a minute.

17          There is defendant's sentencing memorandum.  There

18   was an additional submission and -- the Government's

19   sentencing memorandum was provided on April 17.  Defendant's

20   sentencing memorandum was filed on April 24.  Also on April 24

21   there was a letter with an outpatient treatment letter that

22   was provided and with a request to file under seal, and that

23   request to seal was also granted.

24          There is a pretrial supervision status report noting

25   essential compliance with your supervision.  There was one

SENTENCE

1 blip of a relapse back in 2022, but nothing after that, and

2 was noting a successful adjustment to supervision.

3          So that's everything that I have received.

4          Is that everything that I should have,

5 Mr. Richardson?

6          MR. RICHARDSON:  I believe it is, your Honor.

7          THE COURT:  Is that everything I should have from

8 probation?

9          MR. GUTTMAN:  Yes, your Honor.

10          THE COURT:  And, Ms. Todd, is that everything I

11 should have from the defense?

12          MS. TODD:  Yes, your Honor.

13          THE COURT:  Okay.

14          All right.  So there's just a minor typo on page 7,

15 paragraph 21, all the way to the right above the word "base

16 offense."  I think it should be "as the defendant."

17          MR. GUTTMAN:  Okay, your Honor.

18          THE COURT:  It's just a minor typo.

19          I do want to address the addendum to the presentence

20 report and the objection that was raised by defense counsel to

21 the criminal history calculation.

22          First, for the record, probation had noted that

23 Mr. Amerman had two prior contacts with the law.  The first

24 one was an arrest on July 13 of 2018 and ultimately a

25 disposition to the charge of driving while ability impaired by

7

SENTENCE

1  the consumption of alcohol in Saugerties Village Court,

2  Saugerties, New York.  That would be for a violation under

3  Vehicle and Traffic Law Section 1192 sub 1, and the sentence

4  imposed on October 1 of 2018 was a $300 fine that was paid and

5  a 90-day suspension.  This is a traffic infraction under VTL

6  Section 1193 sub 1.  One point was assessed by probation.

7         Then there was a conviction on December 25 of 2019

8  for aggravated driving while intoxicated in Saugerties Town

9  Court in Saugerties, New York, and the sentence imposed on

10  June 2 of 2021 was three years of probation, a $2,100 fine

11  that was paid, and the license was revoked.  That probationary

12  term is due to expire on June 1, 2024.  And one point was

13  assessed for that.

14         Also, I had an opportunity to weigh in on that.

15  Defense counsel maintains that given that the offense for --

16  that that results in the first criminal history point is for

17  an infraction, and it should not be counted and cited two

18  cases:  One from the Second Circuit, *United States vs.*

19  *Potes-Castillo*, 639 S.3d 106.  That's a 2011 Second Circuit

20  case.  And also relying on *United States vs. Parades*, 185(f)

21  Sup. 3d 287, and that was a case from the Eastern District of

22  New York from 2016.  Judge Weinstein wrote the decision.

23         And in both cases, in summary, this same -- I'm

24  loath to call it a conviction, because a disposition to an

25  infraction is actually not a conviction.  The term

8

SENTENCE

1    "conviction" is used in connection with a criminal offense.

2    And, as Judge Weinstein noted in his opinion in *Parades*, the

3    driving while intoxicated as an infraction is a civil

4    violation and not a criminal one.

5         But before we actually get into that, I just want to

6    correct something that is not quite accurate.  With respect to

7    objections, it starts with "by the Government" in the

8    addendum, and it says "To date, the Government has not

9    submitted any objections to the presentence report."

10        As stated, it sounds like the Government hasn't

11   responded at all in connection with the presentence report.

12   It should more accurately state that by letter dated

13   February 23, 2023, the Government advised that it had no

14   objections to the presentence report.  That would be more

15   accurate.

16        The same way that it then follows with saying that

17   the Government has submitted a letter dated March 17, 2023, in

18   opposition to defense counsel's objection addressed below.

19   And line number 7 in the paragraph right under the words "by

20   the defendant," beginning with the words "application note 5,"

21   in parentheses it says "that application note."  It should

22   state:  "As amended after the Second Circuit's decision in

23   *Potes-Castillo*."

24        Last paragraph, third line up from the bottom on the

25   line beginning with the word "conduct," it should say

SENTENCE

1   "recidivism," not "recidivation."

2           I have carefully considered the arguments presented

3   by both sides, and I am persuaded that that first point,

4   criminal history point, should not be assessed against the

5   defendant as a criminal history point.

6           I start by noting that, as set forth by the Supreme

7   Court back in 2007, just two years after the *Booker* decision

8   making the guidelines advisory and not mandatory, the court

9   underscored that the proper calculation of the sentence

10  guideline range is a starting point and initial benchmark for

11  the court's determination as to what is a reasonable sentence

12  in any case.

13          The court noted, however, that the sentence

14  guideline range is not the only consideration, and the

15  district court, after hearing from all the parties, should

16  consider the statutory factors, referring to the 3553(a)

17  factors.

18          After *Gall* was decided, the Second Circuit in 2010

19  in *United States vs. Dorbee*, found at 616 F.3d 174 -- by the

20  way, *Gall* citation is 552 U.S. 38 2007 -- the Second

21  Circuit -- well, that case dealt with the application of child

22  pornography guidelines.  But the import of that case is that

23  the circuit underscored that the sentencing commission's

24  guidelines lack the force of law, and courts are not bound to

25  apply the sentencing guidelines but must consult them --

SENTENCE

1   again, in keeping with *Gall* –– and take them into account in

2   light of the sentencing commission's relative expertise.

3           The court noted that the sentencing guidelines are

4   typically developed by the sentencing commission using an

5   empirical approach based on data about past sentencing

6   practices, citing *Rita versus United States*, 551 U.S. 338 at

7   349.  That was decided in 2007, the same term as *Gall*.

8           In *Dorbee*, however, the child pornography guidelines

9   that were discussed by the court there, the sentencing

10  commission did not use any empirical data in amending the

11  child pornography guidelines.

12          The same is true here with respect to driving under

13  the influence.  That was not a point that was necessarily

14  addressed by Judge Weinstein in his decision.

15          In amending application note 5 to section 481.2C and

16  requiring that all DWI convictions count regardless of their

17  classifications, the sentencing commission did not engage in

18  any kind of empirical analysis whatsoever, even though it has

19  the ability to do so, because it collects sentences from all

20  around the country.  It collects data about sentences from all

21  around the country.  It has a research division that does

22  nothing but research and put out reports on various different

23  issues.

24          What the commission did was decide that it stood in

25  the shoes of the Supreme Court and decide the circuit split,

SENTENCE

1    because at the time of *Potes-Castillo*, there were four other

2    circuits that basically held that there were no exceptions for

3    DWI and that those convictions -- again, I use that term with

4    reservation here -- counted.

5            Whether or not a circuit split should be decided one

6    way or another is the province of the Supreme Court or the

7    province of Congress, because Congress also has the ability to

8    commission studies, probably in the best position possible to

9    commission a study looking at state statutes around the

10   country and in the territories to determine what the impact is

11   of these kinds of infractions and whether they should be

12   counted.  Congress has not done that.

13           I do want to adopt the analysis of Judge Weinstein

14   in *United States vs. Paredes*, and I just add what I just said

15   as sort of an extra support for the ultimate conclusion that

16   Judge Weinstein came to, consistent with the Second Circuit in

17   *Potes-Castillo*.  In *Potes-Castillo*, the circuit remanded the

18   case back to the district court to make a specific finding

19   that -- as to before the DWI offense was categorically more

20   serious than careless or reckless driving, which under Section

21   4A21.1C1 would not be counted if the sentence imposed was more

22   than one year of probation and more than 30 days.  And, in

23   fact, on remand, the district court found that it was

24   categorically not more serious than a reckless driving offense

25   and did not assess the extra point.

SENTENCE

1          It bears noting that driving while impaired by

2    alcohol, the section under which Mr. Amerman was sentenced in

3    the first case, the maximum penalty is a $500 fine and 15 days

4    in jail, which takes it completely outside of the category of

5    crimes or offenses, misdemeanors and petty offenses, that can

6    be counted otherwise.

7          It also bears noting that reckless driving under the

8    New York Vehicle and Traffic Law Section 1212, which is an

9    unclassified misdemeanor, the maximum for the first conviction

10   is a $300 fine and 30 days in jail.  So again, it's still

11   under the penalty that could be imposed otherwise in order to

12   be counted under 4A1.2C1.

13         In this regard, I can't but feel that this is in

14   some ways a similar situation to all the litigation that we've

15   had in the past few years in applying a categorical approach

16   to those offenses that could be categorized as violent felony

17   offenses for the purpose of counting under the Armed Career

18   Criminal Act.  And ultimately what the Supreme Court has found

19   in those cases is where, as here, you have a statute where in

20   the crimes of violence case where the statute allows for an

21   interpretation or for the commission of conduct that is both

22   either nonviolent or violent, then that cannot be categorized

23   as a violent crime for purposes of an enhancement.

24         As Judge Weinstein noted for the driving under the

25   influence, you don't even need to be driving to be found

SENTENCE

1    guilty of it, just drunk and sitting behind the wheel of a car

2    that isn't even turned on.  As Judge Weinstein said,

3    application of the commentary as amended in 2012 would lead to

4    an absurd result.  And like Judge Weinstein, I refuse to

5    follow it.

6          As Judge Weinstein noted in quoting *Potes-Castillo*

7    at 111, he said, "The guidelines commentary is not binding in

8    all instances," and the circuit was quoting *Stinson v. United*

9    *States Supreme Court* in *Stinson versus United States*, 508 U.S.

10   36 at 43.  As Judge Weinstein goes on to say, "As Cardozo put

11   it in matter of *Rouss*, 221 New York 81 at 91, 1917, statutes

12   must be so construed if possible that absurdity and mischief

13   may be avoided."

14         The sentencing commission set itself up as the

15   decider as to what offenses are serious or not, even though

16   the people of the State of New York have determined that

17   certain infractions should be treated more seriously than

18   others, and without any empirical data decided to amend the

19   commentary, and therefore, because it does produce an absurd

20   result, I will not follow it.

21         That being said, Mr. Amerman's criminal history,

22   then, is 1.  There is no disagreement that the total offense

23   level here is 19.  The resulting sentence guideline range is

24   30 to 37 months.

25         Defendant's objection to the presentence report is

SENTENCE

1   sustained, and the presentence report is adjusted accordingly.

2           And, Mr. Amerman, I'm sorry.  I forgot to ask you.

3   I know I recited a whole litany of documents that we've all

4   agreed that we received.

5           Did you have an opportunity to review those

6   documents with Ms. Todd?

7           THE DEFENDANT:  Not in person, but I did read

8   through them as we spoke on the phone.

9           THE COURT:  Okay.  So you know what the contents

10  were?

11          THE DEFENDANT:  Yes, your Honor.

12          THE COURT:  Okay.  And did you understand the

13  objection that she raised that I just finished discussing?

14          THE DEFENDANT:  Yes, your Honor.

15          THE COURT:  Okay.  And aside from that objection, is

16  there anything else in the presentence report that you think

17  needs to be corrected?

18          THE DEFENDANT:  No, your Honor.

19          THE COURT:  Okay.  Thank you.

20          MS. TODD:  Your Honor, just to complete the record,

21  I also provided Mr. Amerman with copies of all the document

22  that the Court received, so he has hard copies.

23          THE COURT:  Okay.  Thank you.

24          One other thing.  The Government made a motion under

25  section 5K.1 of the sentencing guidelines.  That motion is

SENTENCE

1    granted.

2            With that, as I mentioned earlier, I do have to

3    consider other things.  I will turn the floor over to the

4    attorneys.  I'll hear from the Government first, then

5    Ms. Todd, of course keeping in mind that I have reviewed

6    everyone's submissions.

7            Mr. Richardson.

8            MR. RICHARDSON:  Your Honor, I'll be brief.

9            The Government has laid out its position in view of

10   this case in its sentencing memorandum.  I'll just say we're

11   going to rely on that submission, but Mr. Amerman has kept up

12   his end of the agreement with the Government.

13           THE COURT:  Okay.  Thank you.

14           Ms. Todd.

15           MS. TODD:  Yes, your Honor, and I, too, will be

16   brief.

17           I will note for the Court that over the last three

18   years, I've come to know Mr. Amerman, I think, quite well in

19   his ebb and flow.  It is without question -- and I'm sure

20   he'll express that to the Court in his own words -- that he is

21   deeply sorry for his involvement in this crime.  I believe,

22   having come to know him, that this really is an aberration.

23   This is not who he is.

24           During the last three years, I think he has grown as

25   a person, and part of that growth has a lot to do with his

SENTENCE

1    sobriety, which has given him an opportunity to think deeply

2    about how he makes his decisions and how he wants to be seen

3    in society.  His partner is here, Ms. Litsman (ph).  They came

4    together.  He's in a committed and responsible relationship.

5    As I've described in the sentencing submission that I

6    submitted to the Court, he has maintained his employment.  He

7    values the counseling that he gets through the program that he

8    regularly attends, and the Court saw the updated letter.

9            I would ask the Court to consider my recommendation

10   of what an appropriate sentence, given all of what your Honor

11   knows about the case and his cooperation.  From the very

12   beginning with law enforcement, he was questioned.  He takes

13   full responsibility.  And I'd ask the Court to consider a

14   sentence of time served.  And I know probation asked for a two

15   years post release supervision.  I'd ask the Court to consider

16   one year.

17           THE COURT:  May I ask one question?  Because it's

18   not clear to me either from the treatment letter or the

19   presentence report or Pretrial Services status report.

20           Has he undergone mental health evaluation?

21           THE DEFENDANT:  I have, your Honor.

22           THE COURT:  You did?  Okay.  And did they decide --

23   what did they decide?  That you needed to have counseling or

24   not or...

25           THE DEFENDANT:  It was recommended through my local

SENTENCE

1    probation in Kingston because of my hiccup back in September.

2    And I'm glad to be there.  I was a little resistant at first

3    because I only have so much time before this day, but being in

4    those groups has been very useful.

5            THE COURT:  Can I ask one thing?

6            So just to be clear, so they referred you to a

7    substance abuse treatment program.  But there are some

8    substance abuse treatment programs what are called MICA, so

9    they're dual programs in the sense that they provide not only

10   counseling with respect to addiction issues, but also provide

11   therapy with respect to mental health issues.

12           It's not clear to me whether this program that

13   you're in is one of those kind of duality programs.

14           THE DEFENDANT:  No, your Honor.  It's more like one.

15           THE COURT:  Okay.  Just the substance abuse?

16           THE DEFENDANT:  Yes.

17           THE COURT:  All right.  That's not to say that it

18   can't be helpful and insightful in terms of helping you get

19   insight into issues, right?

20           THE DEFENDANT:  Yeah, very much so.

21           THE COURT:  Okay.

22           THE DEFENDANT:  The people I've met in the groups

23   have been very supportive, you know, hear me every day of

24   taking it one day at a time, and also this whole thing.

25           MS. TODD:  So just to add to that, Judge, initially

SENTENCE

1   during COVID there was a six-month treatment program therapy,

2   but it was telephonic.  That ended, but that included some

3   general well-being, anxiety/depression, mental health

4   treatment.  That has ended.  So the focus now is on his

5   alcoholism and maintaining sobriety.

6             THE COURT:  Okay.  Understood.

7             Is there anything else you want to add, Ms. Todd?

8             MS. TODD:  No, your Honor.  Thank you.

9             THE COURT:  Mr. Amerman, is there anything that you

10  would like to say?

11            THE DEFENDANT:  I would just like to reiterate what

12  Natalie said in regards to -- I can't apologize enough for my

13  involvement in all of this.  If you could take a look at a day

14  in my life from back when I was arrested to today, you would

15  see that 99 percent of it is completely different.

16            I'm just sorry.  I can't really -- thank you, your

17  Honor.  That's about it.

18            THE COURT:  Thank you.

19            As you can probably tell from -- just from the

20  description that I gave in the beginning of all the things

21  that we would cover here, there is a lot that I have to take

22  into consideration in determining what is a reasonable

23  sentence in this and in any case.  We did start with

24  consideration of the advisory sentencing guideline range, and

25  I've made that determination, and I take that very, very

1   seriously, because it is a starting point in any case.

2           But it's not the ending point.  The Court also has

3   to consider within that advisory guidelines structure whether

4   there are any departures that would take the sentence either

5   above the guidelines or below the guidelines.  In this case,

6   the Government has made a motion which would permit the Court

7   to take all of those factors into consideration in determining

8   the reasonable sentence in this case.

9           But all of that is still just a starting point,

10  because the Court still has to consider what I called before

11  these 3553(a) factors.  And 3553(a) factors are very simply

12  the goals that Congress determined should be accomplished any

13  time a federal judge imposes a sentence, and they put it into

14  a statute entitled 18 of the United States Code Section

15  3553(a).  Those goals are the factors.  It's the same thing.

16  They mean the same thing.

17          That statute starts with something called the

18  parsimony clause that says that whatever sentence the Court

19  imposes should not be greater than necessary to achieve those

20  Galls that are set forth in the statute.  And then it proceeds

21  to set forth the factors or the goals, whichever way you want

22  to call it.

23          The Court has considered -- not all of the factors

24  necessarily apply in every case, but here the Court has

25  considered the nature and circumstances of the offense, your

SENTENCE

1  history and characteristics, Mr. Amerman.  The sentence should

2  reflect the seriousness of the offense, promote respect for

3  the law, and provide just punishment for the offense.  The

4  sentence should afford adequate deterrence to criminal

5  conduct, to protect the public from further crimes that might

6  be committed by the defendant -- that's called specific

7  deterrence -- and to protect the public -- to provide

8  deterrence to criminal conduct generally so that others will

9  see happened here and not do the same thing.

10       The sentence also should provide the defendant with

11  needed educational and vocational training, medical care, and

12  other correctional treatment in the most effective manner.

13  And here, restitution is applicable.

14       There's no doubt that the offense was a serious

15  offense.  By the same token, while you had a role to play in

16  the offense, as probation noted and as we all agree, you got a

17  minor role adjustment because you didn't actually participate

18  in the rioting; you didn't participate in any of the actual

19  conduct that went on here.

20       And knowing what I know of Ms. Shader, having

21  already pronounced sentence on her and reviewed all of her

22  information, I can't help but think that she perhaps preyed on

23  the condition that you found yourself in at the time, where

24  your head was at, so to speak, at the time, which, frankly,

25  was very clouded by the alcohol.  And perhaps you weren't

1    really getting the help that you really needed to get at the

2    time.  You weren't mandated yet by the Court to treatment, but

3    I'm talking about the Saugerties court.

4            So part of me feels that but for her reaching out to

5    you, this might have never been even been involved in any of

6    this at all.

7            But what I think is most significant is what you

8    have done from the time even before you were arrested and the

9    steps that you have taken, for lack of a better word, to atone

10   for what you've done.  And certainly you have shown an

11   extraordinary remorse in all the actions that you have taken.

12   You did provide substantial assistance to the Government, as

13   they've noted in their papers.

14           But most importantly, you have really taken your own

15   life by the horns and turned it around.  One thing that

16   impressed me was that despite alcohol use and interspersed

17   with drug use, you've always maintained lawful employment.

18   It's not something I see all the time in defendants who come

19   before me, and I'm sure Ms. Todd would wish that a lot of her

20   clients had the kind of employment history that you have.  And

21   you've always took steps to strive to do better, to get a

22   better job, to get a job where you might learn something.  And

23   your employers, by and large, seem to like the work that you

24   do and would even take you back.  There's something to be said

25   for that.

SENTENCE

1        The letter from your treatment counselor I thought

2    was stellar.  It's very positive and it's encouraging.  And I

3    do think that you've taken your sobriety seriously.

4        And the other thing that I'm taking into

5    consideration is your family situation.  You've taken steps to

6    be a helpful, positive partner with your girlfriend and to be

7    a positive father figure to her kids, especially her daughter,

8    who has special needs.  I'm impressed that you've been able to

9    connect with her in a way that seems to be helpful to both of

10   you.

11       I think about all of that and the 3553(a) factors,

12   and the big question that I asked myself at that point is what

13   would be accomplished by sending a person to jail.  And the

14   answer that I come to is nothing.  If anything, there would be

15   damage caused, damage to the family, disrupting your

16   employment.  You already have a felony conviction, so the fact

17   that you are able to maintain a decent job with a felony

18   conviction speaks volumes for you in a positive way.  You

19   haven't let that hinder you in any way.  So that is a

20   positive.

21       That being said, the sentence imposed is three years

22   of probation to run concurrent with the balance of probation

23   that you owe for state court.

24       I did mention that restitution is mandatory here in

25   the amount of $150.80, payable -- it's due immediately and

SENTENCE

1    payable at the rate of 10 percent of the gross monthly income,

2    and that's jointly and severally liable with Samantha Shader.

3              I forget what her docket number is.

4              MR. RICHARDSON:   20CR202.

5              THE COURT:  Thank you.

6              The Government is not seeking forfeiture, correct?

7              MR. RICHARDSON:  That's correct, your Honor.

8              THE COURT:  No fine is imposed due to inability to

9    pay and priority of restitution.

10             There are special conditions of your probation.  You

11   may not possess any firearm, ammunition, or destructive

12   device.  In that regard, I advise you that this is a felony

13   conviction in this case.  You already have a felony conviction

14   for the second driving while intoxicated.  As a result, under

15   federal law and also under New York law, you are considered a

16   person who is ineligible or prohibited from possessing a

17   firearm.  What that means for practical purposes is that under

18   federal law, if you are found in possession of a firearm, you

19   could be convicted for possessing that firearm and face up to

20   15 years in jail.

21             THE DEFENDANT:  I understand, your Honor.

22             THE COURT:  And if you possess it while you're on

23   probation, then that would be a violation of probation, and

24   for a violation of probation, if you violate any of the

25   conditions of probation, the Court would have the option of

SENTENCE

1   sentencing you the same way as I do today, up to five years or

2   within the guideline range -- all the options that are

3   available to me today would be available at that point in

4   time, or a sentence of -- depending on what the offense is,

5   within whatever the guideline range would be for that

6   violation of probation.

7          Do you follow that so far?

8          THE DEFENDANT:  I do, your Honor.

9          THE COURT:  Okay.

10         You must comply with the restitution order.  You

11  must make full financial disclosure to probation to determine

12  your ability to pay both restitution and drug treatment, which

13  I'll talk about in a minute.

14         So on request you must provide to the Probation

15  Department full disclosure of your financial records,

16  including commingled income, expenses, assets, and

17  liabilities, to include yearly income tax returns.

18         With the exception of the financial accounts

19  reported and noted with within the presentence report, you are

20  prohibited from maintaining and/or opening any additional

21  individual and/or joint checking, savings, or other financial

22  accounts for either personal or business purposes without the

23  knowledge and approval of the Probation Department.  You must

24  cooperate with the Probation Officer in the investigation of

25  your financial dealings and provide truthful monthly

SENTENCE

1   statements of your income and expenses.  You must cooperate in

2   the signing of any necessary authorization to release

3   information forms permitting the Probation Department access

4   to your financial information and records.

5          That's until such time as the restitution order is

6   complied with.

7          Restitution is jointly and severally liable, so that

8   means that Ms. Shader also has an obligation to make payments

9   for the restitution.  So you're both sort of equally

10  responsible for that.

11         There is a search condition.  You must submit your

12  person, property, house, residence, vehicle, papers,

13  computers, other electric communications or data storage

14  devices or media or office to a search conducted by a United

15  States Probation Officer.  Failure to submit to a search may

16  be grounds for revocation of release.

17         You must warn any other occupants that the premises

18  may be subject to searches pursuant to this condition.  An

19  officer may conduct a search pursuant to this condition only

20  when reasonable suspicion exists that you have violated a

21  condition of your supervision and that the areas to be

22  searched contain evidence of this violation.  Any search must

23  be conducted at a reasonable time and in a reasonable manner.

24         I'm going to also direct that you undergo a mental

25  health evaluation.  I think it would be worthwhile to have an

SENTENCE

1    actual evaluation done and, if deemed necessary, participate

2    in mental health treatment program as approved by the

3    Probation Department.  You'll have to contribute to the cost

4    of such services rendered and any psychotropic medications

5    prescribed, if they're prescribed.  To the degree that you are

6    reasonably able and cooperate in securing any applicable

7    third-party payment -- that's health insurance -- and disclose

8    all financial information and documents to probation so they

9    can assess your ability to pay.

10           You're already in drug treatment, so I'm just going

11   to direct that you continue in drug treatment at the program

12   that you're in.  It seems to be working well.

13           And as I'm sure the conditions are probably the same

14   for -- under the state, you must not use any illicit drugs or

15   alcohol.  Marijuana is legal for personal use in New York; you

16   can't use any marijuana either.

17           If you are prescribed any medication, you need to

18   show that prescription to your Probation Officer so that they

19   can take that into account when you get tested, because there

20   will be random drug testing.

21           THE DEFENDANT:  Okay.

22           THE COURT:  This way they can rule out any false

23   positives.

24           And maintain lawful, verifiable employment.  I don't

25   think that's going to be a problem with you.

SENTENCE

1          There is a $100 special assessment that I must

2     impose.  Those are like court costs.

3          There are no open counts, correct, Mr. Richardson?

4          MR. RICHARDSON:  That's correct, your Honor.

5          THE COURT:  I have no problems with transferring

6     jurisdiction to the Northern District of New York to

7     facilitate his supervision.

8          MS. TODD:  I have no objection, Judge.

9          THE COURT:  You've already been reporting to

10    Pretrial in the Northern District of New York.

11         THE DEFENDANT:  Yes, your Honor.

12         THE COURT:  Okay.  You may have waived your right to

13    appeal pursuant to the plea agreement that you entered into.

14    In any event, I do advise you that if you do have a right to

15    appeal -- you may have a right to appeal from the sentence and

16    judgment of the Court.  If you wish to do so, you must do so

17    within 14 days of the final entry of judgment.  You may be

18    entitled to be represented by counsel on appeal.  If you

19    cannot afford counsel, you may ask for the Court to appoint

20    counsel for you at no cost to you.  And if you cannot afford

21    the fees and the costs of the appeal, you may ask for leave to

22    proceed by way of poor person relief.

23         And, Ms. Todd, I would ask that you stay on the case

24    for that 14-day period and file such a notice on behalf of

25    Mr. Amerman if that's his wish.

SENTENCE

```
1          MS. TODD:  Yes, your Honor.

2          THE COURT:  Is there anything else that the parties

3   would like to address with the Court?

4          MR. RICHARDSON:  Just one small matter, your Honor.

5   I believe everybody in this courtroom understands that the

6   restitution is owed to the New York City Police Department.

7          THE COURT:  Yes.

8          MR. RICHARDSON:  I don't believe it had been put on

9   the record, so I just wanted to make sure that was clear on

10  the record.

11         THE COURT:  Right.  It is in the presentence report.

12  It's owed to the New York City Police Department, but it's

13  payable through the Clerk of the Court.

14         THE DEFENDANT:  Okay.

15         THE COURT:  And I think that's included in the

16  presentence report as well.

17         MR. GUTTMAN:  Yes, your Honor, it is.

18         MS. TODD:  Just one other small matter which doesn't

19  really affect anything, but I think I heard the Court say that

20  Mr. Amerman has a felony conviction.  It's actually a

21  misdemeanor.

22         THE COURT:  Oh, I'm so sorry.  I misspoke.

23         But you do have a felony conviction here.

24         MS. TODD:  Right.

25         THE COURT:  Yes, so that admonition about you being
```

SENTENCE

1    prohibited from possessing a firearm does apply to you moving

2    forward.

3              THE DEFENDANT:  Yes.

4              THE COURT:  Just so that you are aware.

5              Anything else?

6              MR. RICHARDSON:  Not from the Government, your

7    Honor.

8              MS. TODD:  No, your Honor.  Thank you very much.

9              THE COURT:  Thank you all.

10             Good luck, sir.

11             THE DEFENDANT:  Thank you, your Honor.

12             (Whereupon, the matter was concluded.)

13                    *    *    *    *    *

14   I certify that the foregoing is a correct transcript from the
     record of proceedings in the above-entitled matter.

15

16   /s/ Rivka Teich
     _____
     Rivka Teich, CSR RPR RMR FCRR

17   Official Court Reporter
     Eastern District of New York

18

19

20

21

22

23

24

25